Filed 5/13/26  Royal Coach Tours v. Miletak CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ROYAL COACH TOURS, INC., | H052687 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 20CV364698) |
| v. | |
| NICK MILETAK, | |
| Defendant and Appellant. | |

Defendant Nick Miletak appeals from a judgment entered against him in the amount of $257,197.53 and in favor of his former employer, plaintiff Royal Coach Tours, Inc. (Royal Coach), following a court trial.  Royal Coach obtained the judgment after prevailing on a malicious prosecution cause of action against Miletak.  Miletak had previously sued Royal Coach unsuccessfully for promissory estoppel among other claims.

In this appeal from the judgment in the malicious prosecution action, Miletak contends the trial court lacked personal jurisdiction; he was improperly denied a court reporter and a jury trial; probable cause existed for his promissory estoppel claim which precluded Royal Coach's malicious prosecution claim; the court erred in its evidentiary rulings; there was judicial bias or misconduct; Royal Coach committed fraud on the court but the court erroneously denied a motion to vacate the judgment; there are errors regarding the settled statement of the oral proceedings of the trial; this court's denial of

his writ petitions while the appeal was pending effectively denied him the resources necessary to obtain an appellate attorney; and this court erred in his prior appeal from the denial of his anti-SLAPP motion.

For reasons that we will explain, we will affirm the judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. *Royal Coach's Civil Complaint against Miletak*

Royal Coach filed a complaint for malicious prosecution against Miletak.  Royal Coach's allegations included the following:  Miletak was hired to participate in Royal Coach's student driver trainee program.  When formal classroom instruction was scheduled to begin, Miletak appeared that morning, handed in his resignation, and demanded compensation for the time that he had been available prior to the formal classroom instruction.  Royal Coach refused, but it still compensated him for 11 hours of classroom time that he had apparently logged during informal training.

About a week after resigning, Miletak filed a civil complaint for damages against Royal Coach, alleging five causes of action (the employment action).  Following a demurrer by Royal Coach, Miletak filed an amended complaint alleging two causes of action for promissory estoppel and constructive discharge.  After a court trial, judgment was entered in Royal Coach's favor.  Miletak appealed, and this court affirmed the judgment.

Royal Coach commenced the instant malicious prosecution action against Miletak.  Miletak filed various motions, including an anti-SLAPP motion (Code Civ. Proc., § 425.16).  The trial court denied the anti-SLAPP motion.  Miletak appealed, and this

---

[1] Our summary of the factual and procedural background is primarily from the trial court's statement of decision after trial.  The record on appeal does not contain other basic documents such as the complaint.

court affirmed the order. (*Royal Coach Tours, Inc. v. Miletak* (Mar. 30, 2023, H050167) [nonpub. opn.] (*Royal Coach*).)[2]

## B. *Trial*

A bench trial was held on Royal Coach's malicious prosecution claim. No court reporter was present. The record reflects that the court denied without prejudice a pretrial motion by Miletak to exclude evidence of prior lawsuits against Royal Coach and evidence of his litigation history. The court later determined during trial that evidence of Miletak's litigation history was relevant. The court granted a pretrial motion by Miletak to exclude evidence of his prior convictions, and the issue apparently never arose during trial.

Following trial, the court filed a statement of decision finding that (1) Miletak's employment action against Royal Coach was terminated in Royal Coach's favor, (2) Miletak lacked probable cause, (3) Miletak pursued the employment action with malice, and (4) Royal Coach incurred damages. The court further found that punitive damages were warranted. The court awarded Royal Coach the sum of $257,197.53.

Miletak filed a timely notice of appeal from the judgment. While the appeal was pending, Miletak filed several motions in the trial court, including for new trial, to dismiss the action, and to vacate the judgment. The trial court denied each motion.

As the trial was not reported by a court reporter, Miletak sought to proceed on appeal by way of a settled statement regarding the oral proceedings. He filed a proposed settled statement with the trial court, and Royal Coach filed a response. The trial court held a hearing and later filed a settled statement. While Miletak's appeal was pending, he filed petitions in this court, including for writ of supersedeas. We denied his petitions.

---

[2] On our own motion, we take judicial notice of this court's opinion in *Royal Coach*, *supra*, H050167, as Miletak quotes from it in this appeal.

3

## II. DISCUSSION

On appeal, Miletak contends: (1) the trial court lacked personal jurisdiction over him after he relocated out-of-state during the pendency of the action, (2) he was improperly denied a court reporter for trial, (3) the court erred in denying a jury trial, (4) probable cause existed for his promissory estoppel claim in the underlying employment action which precluded Royal Coach's malicious prosecution claim, (5) the court failed to rule on a dispositive pretrial motion in limine, (6) the court erroneously admitted prejudicial evidence regarding his prior lawsuits, (7) the court erroneously excluded evidence of legal advice that he received which would have negated the elements of malice and lack of probable cause for Royal Coach's malicious prosecution claim, (8) there was judicial bias or misconduct, (9) the court erroneously denied a motion to vacate the judgment, (10) Royal Coach committed fraud on the court which requires reversal of the judgment, (11) the court delayed certifying the settled statement and it contains inaccuracies, (12) this court's denial of his writ petitions effectively denied him the resources necessary to obtain an attorney to represent him on appeal, and (13) this court erred in his prior appeal regarding denial of his anti-SLAPP motion.

Before analyzing Miletak's contentions, we set forth the general appellate rules that govern our review of his claims.

### A. *General Appellate Rules*

On appeal, " '[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; accord, *In re Julian R.* (2009) 47 Cal.4th 487, 498-499.) In other words, "the burden is on an appellant to demonstrate, on the basis of the record

4

presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*).)

An appellate court's review is generally "confined . . . to the proceedings which took place in the court below and are brought up for review in a properly prepared record on appeal [citation]." (*USLIFE Savings & Loan Assn. v. National Surety Corp.* (1981) 115 Cal.App.3d 336, 343.) " 'No facts outside the record and no affidavits which were not before the trial court can be considered on appeal.' [Citations.]" (*Dryer v. Dryer* (1964) 231 Cal.App.2d 441, 451.) Consequently, factual allegations "which are not in the record, but only in the briefs, cannot be considered by an appellate court." (*Ibid.*; accord, *Ehman v. Moore* (1963) 221 Cal.App.2d 460, 463 [explaining that "[m]atter which does not appear in the record may not be considered by an appellate court upon the suggestion of counsel in their briefs"].) In other words, " 'if it is not in the record, it did not happen.' " (*Jameson*, *supra*, 5 Cal.5th at p. 609, fn. 11.)

Consequently, to affirmatively show error, the appellant has "the burden . . . to provide an adequate record to assess error." (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295 (*Maria P.*).) " 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' [Citation.]" (*Jameson*, *supra*, 5 Cal.5th at p. 609.) In other words, " ' "if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.]" (*Ibid.*)

"To demonstrate error, [the] appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) "[C]onclusory claims of error will fail." (*Ibid.*) "[I]t is not the role of an appellate court to carry appellate counsel's burden." (*Id.* at p. 412.) This means that a party must "support each point by

argument and, if possible, by citation of authority."[3]  (Rule 8.204(a)(1)(B).)  Further, an appellant must "[p]rovide a summary of the significant facts limited to matters in the record" on appeal.  (Rule 8.204(a)(2)(C).)  To that end, a party must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears.  If any part of the record is submitted in an electronic form, citations to that part must identify, with the same specificity required for the printed record, the place in the record where the matter appears."  (Rule 8.204(a)(1)(C).)  "If a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived.  [Citation.]"  (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*).)

### B.  *Analysis*

#### 1.  **Personal jurisdiction**

Miletak contends that the trial court lacked personal jurisdiction over him at the time of trial and judgment because he "had relocated to Florida and severed ties with California prior to judgment."  Royal Coach contends that the trial court had personal jurisdiction over Miletak since the commencement of the action when he made a general appearance.  In reply, Miletak does not dispute that the trial court had personal jurisdiction over him initially.  Instead, he argues that "jurisdiction collapse[d]" thereafter.

In general, " 'the court in which an action is pending has jurisdiction over a party from the time summons is served on him . . . .  Jurisdiction of the court over the parties

---

[3] Generally, "an opinion of a California Court of Appeal . . . that is not certified for publication or ordered published must not be cited or relied on by . . . a party in any other action."  (Cal. Rules of Court, rule 8.1115(a) (all further rule references are to the California Rules of Court).)  Royal Coach in its respondent's brief cites an unpublished opinion by this court from another case.  Royal Coach is admonished not to cite an unpublished California appellate court opinion except as specifically permitted by the California Rules of Court.  (See *id*., rule 8.1115(b).)

and the subject matter of an action continues throughout subsequent proceedings in the action.' " (*Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 263, italics omitted (*Goldman*).)  Upon a trial court acquiring " 'fundamental' jurisdiction over the parties," "this jurisdiction continues to final judgment . . . ." (*Ibid.*, italics omitted.)  In other words, " '[w]here jurisdiction of the person . . . has once attached it is not defeated by the removal of the person . . . beyond the jurisdiction of the court.  [Citation.]" (*Id.* at p. 264.)

In this case, Miletak does not dispute that the trial court had personal jurisdiction over him at or near the outset of the case.  We determine that the court did not lose personal jurisdiction when Miletak later moved out of state.  (*Goldman*, *supra*, 160 Cal.App.4th at pp. 263, 264.)

The only legal authority cited by Miletak to support his contention that the trial court had no personal jurisdiction after he relocated is *Daimler AG v. Bauman* (2014) 571 U.S. 117.  That case, however, addressed "the authority of a court in the United States to entertain a claim brought by foreign plaintiffs against a foreign defendant based on events occurring entirely outside the United States." (*Id.* at p. 120.)  *Daimler AG* does not support Miletak's contention that a trial court, having initially obtained personal jurisdiction over a defendant, may lose jurisdiction if the defendant later moves out of state during the pendency of the action.

Miletak argues in his reply brief on appeal that the trial court lost jurisdiction when Royal Coach was sold to another company and purportedly no longer had standing to maintain the action.  To the extent Miletak is contending that this resulted in a loss of personal jurisdiction over Miletak, this new theory, raised for the first time in the reply brief, is "forfeited.  'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief . . . .' [Citation.]" (*People v. Rangel* (2016) 62 Cal.4th 1192, 1218.)  Further, Miletak fails to provide legal authority establishing that the

7

purported sale of Royal Coach to another entity precluded Royal Coach from continuing to prosecute the action against Miletak.

In sum, Miletak fails to demonstrate that the trial court lost personal jurisdiction over him.

## 2. Absence of court reporter at trial

Miletak contends that he was improperly denied a court reporter for trial. He argues that he was granted a fee waiver in March 2022, and that he was therefore entitled to a court reporter for trial upon request. Miletak contends that "[a]fter the start of trial, [the trial court] informed the litigants that no court reporter was present." Miletak argues that he appeared at trial by Zoom, that he could not see "the well of the courtroom," and that he "immediately" requested a court reporter. He argues that his "request for a court reporter was denied by the [court] who continued the trial."[4]

"[A]n official court reporter or an official court reporter pro tempore of the superior court must be provided . . . '[i]n a civil case, on the order of the court or *at the request of a party*.' " (*Jameson*, *supra*, 5 Cal.5th at p. 610, fn. & some italics omitted.) "[A] person who because of limited financial resources qualifies for a waiver of initial court filing fees is [also] entitled . . . to a waiver of fees for the attendance of an official court reporter at a hearing or trial. (*Id.* at p. 597.) Consequently, "an official court reporter, or other valid means to create an official verbatim record for purposes of appeal, must generally be made available to in forma pauperis litigants *upon request*." (*Id.* at p. 599, italics added.) In *Jameson*, the California Supreme Court held that a trial court erred by 'failing to make an official court reporter available to [a fee waiver recipient] upon request." (*Id.* at p. 623.)

---

[4] We note that although Miletak in his opening brief on appeal contends that the trial court "denied" his request for a court reporter, he argued in his proposed settled statement filed in the trial court that the court "ignored" his request.

In this case, Miletak fails to establish that he requested a court reporter for trial. According to an order denying Miletak's motion for a new trial, "the trial commenced without [Miletak] inquiring about the presence of a court reporter or electronic recording or anything else." Similarly, the settled statement of the trial does not reflect that he requested a court reporter.

Miletak argues on appeal that Royal Coach's counsel did not dispute or object to his contention at the hearing on the settled statement that he had requested a court reporter at trial. At the hearing on the settled statement, however, the trial court—consistent with the settled statement of the trial and the order denying a new trial—stated that "there was no request by [Miletak] for a court reporter . . . of which [the court] was aware."

Accordingly, in the absence of the record reflecting a request by Miletak for a court reporter for trial, he fails to demonstrate error in the trial court's failure to provide a court reporter for trial.

### 3. Denial of jury trial

Miletak contends that the trial court erred in denying his request for a jury trial. According to Miletak, he timely and "expressly demanded a jury trial" at a pretrial conference. He argues that he was "granted a fee waiver on March 8, 2022 and was therefore exempt from paying jury fees . . . ." Miletak further contends that even when the right to a jury trial has been waived, such as by the failure to deposit jury fees, a trial court has the discretion to allow a jury trial. In this case, we understand Miletak to argue that the court abused its discretion in denying his request for a jury trial.

In civil cases, the right to a jury trial can be waived as prescribed by statute, including by failing to make a timely demand for a jury and by failing to timely deposit a jury fee. (*TriCoast Builders, Inc. v. Fonnegra* (2024) 15 Cal.5th 766, 773 (*TriCoast Builders*).) In this case, Miletak fails to provide adequate record citations supporting his contention that he timely requested a jury trial and that a fee waiver exempted him from

9

paying a jury fee. Further, our review of the record indicates to the contrary on both points. For example, in contending that he timely requested a jury trial, Miletak in his opening brief on appeal initially states that he made the request the "day after" a May 30, 2024 trial setting conference. Elsewhere in his opening brief, however, he repeats an assertion that he made in the trial court that his jury trial request was made "[i]n the May 30th pretrial conference" itself. However, he later states in his opening brief that he "requested a jury trial on March 30, 2024." Nowhere in his opening brief does Miletak provide a citation to the record reflecting a jury trial request before the day of trial. Further, a May 30, 2024 minute order for the hearing setting the trial date reflects that "Miletak request[ed] to have Court Trial remotely." In addition, according to the settled statement regarding trial, the trial court found that Miletak's May 31, 2024 trial brief "never mentioned that he had made a proper request for a jury trial . . . ."

Similarly, although Miletak contends that he was exempt from paying jury fees due to an approved fee waiver, he does not provide a citation to the record showing that the approved fee waiver also encompassed jury fees. (See Rule 3.56(1) [listing jury fees as one of several "court fees and costs that *may* be waived upon granting an application for an initial fee waiver, either at the outset or upon later application" (italics added)]; cf. Rule 3.55 [listing "[c]ourt fees and costs that *must* be waived upon granting an application for an initial fee waiver" (italics added)].) Moreover, in the trial court's order denying Miletak's motion for a new trial, the court stated that "the fee waiver filed on 08 March 2022 shows that [Miletak] was granted a fee waiver but not for jury fees and expenses." Similarly, according to the settled statement regarding trial, the trial court "reviewed the order [by another judge] on 08 March 22 wherein [Miletak] was granted a partial fee waiver. According to Box 4.a.2, the order granting a partial fee request, there was no granting of any waiver of jury fees and expenses, contrary to any claim made by [Miletak]." In sum, Miletak fails to demonstrate, with adequate record citations, that he timely requested a jury trial and that he was not required to pay jury fees. We therefore

10

turn to the issue of whether the trial court nevertheless abused its discretion in denying Miletak a jury trial.

"[A] litigant that has waived jury trial may seek relief from the waiver. The trial court has discretion whether to grant relief, on such terms as may be just. (§ 631, subd. (g) . . . .)" (*TriCoast Builders, supra*, 15 Cal.5th at pp. 766, 773.) "[C]ourts should consider all factors relevant to whether granting relief in the particular situation before them would be 'just.' [Citation.]" (*Id.* at p. 779.) Relevant factors include "whether granting relief from waiver would result in any hardship to other parties or to the court, such as delay in rescheduling the trial for a jury or inconvenience to witnesses"; "the timeliness of the request; whether the requester is willing to comply with applicable requirements for payment of jury fees; and the reasons supporting the request. [Citations.]" (*Id.* at pp. 779-780.)

If a party contends that the trial court failed to properly exercise its discretion to grant relief from a jury trial waiver, and this argument is made for the first time on appeal from the judgment, rather than pretrial by a petition for extraordinary writ, the party "must show it was prejudiced by the trial court's denial of its request for relief from waiver." (*TriCoast Builders*, *supra*, 15 Cal.5th at p. 791; see *id.* at pp. 785-786.)

We determine that Miletak fails to demonstrate reversible error. First, the record does not reflect that Miletak requested relief from a waiver upon the trial court denying a jury trial. "Since the trial court was not asked to exercise its discretion in this manner, it could not have abused its discretion as defendant claims." (*People v. Spirlin* (2000) 81 Cal.App.4th 119, 128; accord, *Agricultural Labor Relations Bd. v. Laflin & Laflin* (1979) 89 Cal.App.3d 651, 667, fn. 16 ["It would be both inappropriate and futile for us to attempt to review for abuse a discretion the court was never requested to exercise and did not purport to exercise"].) Second, Miletak fails to persuasively demonstrate an abuse of discretion by the trial court. He simply contends that he timely requested a jury trial. As we have just explained, he fails to provide a supporting record citation and the

11

record indicates otherwise. Miletak also continues to insist, despite the record indicating to the contrary, that his approved fee waiver included a waiver of jury fees. No abuse of discretion has been shown. Third, even if there was an abuse of discretion, Miletak fails to argue, let alone show, that he was prejudiced by a denial of a request for relief from a jury waiver. (See *TriCoast Builders*, *supra*, 15 Cal.5th at p. 791.)

Miletak also contends that he "preserves for federal review his claim that the trial court's denial of a jury trial violated the Seventh Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment." Similar to his claim under state law, Miletak contends that he "timely demanded a jury and did not waive his right" and thus "the trial court's denial constitutes structural error requiring reversal under federal law." Because he fails to provide adequate record citations to support his factual contentions, Miletak fails to demonstrate reversible error.

### 4. Whether probable cause existed for Miletak's promissory estoppel claim in the employment action which precluded Royal Coach's subsequent malicious prosecution claim

Miletak contends that the trial court erred in finding in favor of Royal Coach on its malicious prosecution claim because there was probable cause for his prosecution of the promissory estoppel claim in the underlying employment action. Specifically, Miletak argues that probable cause was conclusively established by the denial of Royal Coach's motion for nonsuit on the promissory estoppel claim in the employment action.

"To establish liability for the tort of malicious prosecution, a plaintiff must demonstrate, among other things, that the defendant previously caused the commencement or continuation of an action against the plaintiff that was not supported by probable cause." (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 771 (*Parrish*).)[5] "[A]s a general rule, 'the existence or nonexistence of probable cause is a

---

[5] "The tort [of malicious prosecution] consists of three elements. The underlying action must have been: (i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the malicious prosecution

12

legal question to be resolved by the court in the malicious prosecution case . . . .' [Citation.]" (*Id.* at p. 781, fn. omitted.) " '[T]he probable cause element calls on the trial court to make an objective determination of the "reasonableness" of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable,' as opposed to whether the litigant subjectively believed the claim was tenable. [Citation.] A claim is unsupported by probable cause only if ' " 'any reasonable attorney would agree [that it is] totally and completely without merit.' " ' [Citations.]" (*Id.* at p. 776.)

The California Supreme Court has "held that if an action succeeds after a hearing on the merits, that success ordinarily establishes the existence of probable cause (and thus forecloses a later malicious prosecution suit), even if the result is overturned on appeal or by later ruling of the trial court. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 818 (*Wilson*).) This principle has come to be known as the interim adverse judgment rule." (*Parrish*, *supra*, 3 Cal.5th at p. 771.)

"Although the [interim adverse judgment] rule arose from cases that had been resolved after trial, the rule has also been applied to the 'denial of defense summary judgment motions, directed verdict motions, and similar efforts at pretrial termination of the underlying case.' [Citations.]" (*Parrish*, *supra*, 3 Cal.5th at pp. 776-777.) "Denial of a defense summary judgment motion on grounds that a triable issue exists, *or of a nonsuit*, while falling short of a determination of the merits, establishes that the plaintiff has substantiated, or can substantiate, the elements of his or her cause of action with evidence that, if believed, would justify a favorable verdict. . . . [A] claimant or attorney who is in possession of such evidence has the right to bring the claim, even where it is

---

plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice. [Citations.]" (*Parrish*, *supra*, 3 Cal.5th at pp. 775-776, fn. omitted.)

13

very doubtful the claim will ultimately prevail. [Citation.]" (*Wilson*, *supra*, 28 Cal.4th at p. 824, italics added.)

However, "the interim adverse judgment rule has its limits. The rule applies only to rulings regarding the *merits* of the claim, not those that rest 'solely on technical or procedural grounds.' [Citation.]" (*Parrish*, *supra*, 3 Cal.5th at p. 778, italics added.) For example, "[d]enial of a summary judgment motion on procedural or technical grounds, rather than for existence of triable issues of material fact, says nothing regarding the potential merit of the action and hence does not establish probable cause for its initiation." (*Wilson*, *supra*, 28 Cal.4th at p. 823.)

In the context of a nonsuit motion, a defendant may bring such a motion "after . . . the plaintiff has completed his or her opening statement, *or* after the presentation of his or her evidence in a trial by jury . . . ." (Code Civ. Proc., § 581c, subd. (a), italics added.) In the former situation, upon a motion for nonsuit after an opening statement, a trial court "must accept as true all of the facts set forth in the statement . . . ." (*Timmsen v. Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860, 867-868.) In the latter situation, a nonsuit motion at the conclusion of the plaintiff's case "tests the sufficiency of the plaintiff's evidence before the defense is presented. [Citation.]" (*County of Kern v. Sparks* (2007) 149 Cal.App.4th 11, 16.) In this latter situation, "a ruling denying the prior defendant's motion for nonsuit, *if based on an evaluation of the evidence*," indicates that the prior case was legally tenable for purposes of determining the existence of probable cause. (*Hart v. Darwish* (2017) 12 Cal.App.5th 218, 226, italics added (*Hart*); see *Cowles v. Carter* (1981) 115 Cal.App.3d 350, 353 [stating that "if the trial judge denies a motion for nonsuit and permits a question of fact to go to the jury, he has, of necessity, decided there is sufficient evidence to permit the jury to determine that issue"].)

The trial court in its statement of decision regarding Royal Coach's malicious prosecution action explained the circumstances under which Royal Coach's nonsuit motion was denied in the underlying employment action. Specifically, the court

14

explained that the denial of Royal Coach's nonsuit motion on Miletak's promissory estoppel claim " 'occurred based on Miletak's supplemental opening statement and before the presentation of evidence, so . . . [the] denial of [Royal Coach's] nonsuit motion with regard to the promissory estoppel cause of action was not based on the evaluation of the evidence and does not constitute success on the merits on Miletak's part.' " The court in the malicious prosecution action ultimately determined that the promissory estoppel claim, which the court in the employment action later dismissed on a motion for judgment, was prosecuted by Miletak without probable cause.

On this record, Miletak fails to demonstrate error. The denial of Royal Coach's nonsuit motion in the underlying employment action was based on Miletak's assertions in his opening statement, *not* "based on an evaluation of the evidence." (*Hart*, *supra*, 12 Cal.App.5th at p. 226.) Under these circumstances, the trial court in the malicious prosecution action properly determined that the denial of Royal Coach's nonsuit motion was insufficient to establish probable cause on Miletak's part in pursuing the promissory estoppel claim.[6]

---

[6] We note that Miletak in his opening brief on appeal attributes the following quote to *Parrish*, *supra*, 3 Cal.5th 767: " 'So long as there is probable cause to support at least one claim, a suit will not be considered to have been brought without probable cause.' " This statement is nowhere contained in *Parrish*.

Moreover, the California Supreme Court has held to the contrary by stating that "a suit for malicious prosecution lies for bringing an action charging multiple grounds of liability when some but not all of those grounds were asserted with malice and without probable cause." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 671; accord, *Parrish*, *supra*, 3 Cal.5th at p. 776, fn. 1; *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 57 ["We see no reason for permitting plaintiffs and cross-complainants to pursue shotgun tactics by proceeding on counts and theories which they know or should know to be groundless"]; *Citi-Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.* (2003) 114 Cal.App.4th 906, 913 ["the rule is that a malicious prosecution suit may be maintained where only one of several claims in the prior action lacked probable cause"]; *Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 219 ["a malicious prosecution plaintiff must show that the defendant lacked probable cause in the assertion of at least one theory

In his reply brief on appeal, Miletak purports to quote from the reporter's transcript for the trial in the underlying employment action. However, the quotes that he provides do not support his argument that denial of the nonsuit motion was a "denial based on the merits" in the employment action. To the contrary, the quotes reflect that the trial court in the underlying employment action denied the nonsuit motion after plaintiff's " 'supplemental opening statement' " and before the presentation of any evidence. In other words, the quotes from the underlying employment action relied on by Miletak about the circumstances under which the nonsuit motion was denied are consistent with the recitation in the trial court's statement of decision in the instant action.[7]

Miletak also contends that in his prior appeal in this case regarding the denial of his anti-SLAPP motion, this court's opinion "recognized probable cause in the underlying" employment action. In support of this contention, Miletak quotes the following from this court's prior opinion: "In the 2015 civil action, Miletak alleged

in the prior suit, even if such defendant had probable cause in asserting other theories in that case" (italics omitted)].)

In this case, Miletak prosecuted more than one clam against Royal Coach. On appeal, however, Miletak only addresses whether there was probable cause for the promissory estoppel claim. He does not argue, let alone establish, that the trial court erred in finding a lack of probable cause regarding his other causes of action. As we determine that Miletak fails to establish his claim of error regarding the promissory estoppel claim, we need not determine whether Miletak also fails to meet his burden to show reversible error in view of his failure to address the lack of probable cause as to all his other causes of action.

[7] We understand Miletak to contend in his reply brief on appeal that the trial court's statement of decision incorrectly states in the introduction that Royal Coach's *motion for judgment* was granted in the underlying employment action on Miletak's *promissory estoppel* claim after his opening statement and *before the presentation of evidence*. However, we note that elsewhere in the statement of decision, the court in its legal analysis twice clarifies that Miletak's *promissory estoppel* claim was dismissed upon Royal Coach's *motion for judgment after the presentation of evidence*, and that it was the constructive discharge claim that was dismissed upon Royal Coach's motion for nonsuit after Miletak's opening statement.

16

causes of action for promissory estoppel and constructive discharge. [Citation.] At trial, the court granted Royal Coach's motion for non-suit as to the constructive discharge cause of action after Miletak's opening statement, granted a motion for judgment on the promissory estoppel claim after hearing Miletak's evidence, and dismissed the action with prejudice. [Citation.]" (*Royal Coach*, *supra*, H050167, at p. 2.) This quote is simply a recitation of the procedural history in the case, and nowhere in the opinion did this court "recognize[] probable cause" for Miletak's employment action.

In sum, Miletak fails to establish that the denial of Royal Coach's nonsuit motion in the underlying employment action necessarily demonstrated probable cause for his promissory estoppel claim.

### 5. Failure to rule on motion in limine

Miletak contends that the trial court erred in failing to rule on a dispositive pretrial motion in limine that would have eliminated Royal Coach's sole cause of action for malicious prosecution. According to Miletak, the motion in limine sought to preclude the malicious prosecution claim on the ground that it was barred, because the denial of Royal Coach's nonsuit motion in the underlying employment action established probable cause as a matter of law. Miletak fails to provide a record citation showing that he made such a motion. Moreover, as we have explained, the denial of the nonsuit motion in the employment action did not legally preclude Royal Coach from pursuing a malicious prosecution claim against Miletak. Accordingly, Miletak fails to demonstrate error warranting reversal based on the trial court's purported failure to rule.

### 6. Admission of evidence regarding prior lawsuits

Miletak contends that the trial court erred in allowing the admission of prejudicial evidence. According to Miletak, the court made a pretrial ruling precluding references to his prior litigation history. However, Royal Coach "introduced evidence of his prior lawsuits during post-trial enforcement filings and briefings" over his objection. Miletak

17

argues that evidence of his litigation history was irrelevant and highly prejudicial under Evidence Code sections 1101 and 352, and that reversal is warranted.

Miletak does not provide any record citations to support his claim of error. We therefore deem his claim waived. (*Duarte*, *supra*, 72 Cal.App.4th at p. 856.) Moreover, in the absence of supporting record citations, it is not clear that the record on appeal is adequate to assess the claimed error. Miletak fails to meet his burden on appeal to show error. (*Jameson*, *supra*, 5 Cal.5th at p. 609.)

### 7. Exclusion of evidence regarding advice of counsel

Miletak contends that trial court erred in excluding evidence of legal advice that he received, which would have negated the elements of malice and lack of probable cause for Royal Coach's malicious prosecution claim. Miletak indicates that he submitted one attorney's declaration before trial, that the same attorney testified at trial, and that he submitted a second attorney's declaration in a motion for new trial. However, Miletak argues that the "[t]rial court excluded this advice-of-counsel evidence," that exclusion of such evidence in a bench trial is "even more damaging," and that if the court had admitted the "declarations, there is a reasonable probability that judgment would have been entered for [him] or that a motion for new trial . . . would have been granted."

Miletak does not provide any record citations to support his claim of error. We therefore deem his claim waived. (*Duarte*, *supra*, 72 Cal.App.4th at p. 856.) Moreover, based on the limited record and Miletak's undeveloped argument on appeal, it is not clear that the record supports the claimed error. As an initial matter, Miletak himself admits that one of his attorneys testified at trial. Further, the settled statement indicates that the trial court considered the second attorney's declaration in posttrial motions, but that the court found the declaration "was not helpful at all." Miletak fails to meet his burden on appeal to show error. (*Jameson*, *supra*, 5 Cal.5th at p. 609.)

18

### 8. Judicial bias or misconduct

Miletak contends that a statement by the trial court and various rulings indicate bias by the court and warrant reversal of the judgment. For example, according to Miletak, he requested recusal, and the court purportedly responded, " '[T]hat is why I don't like when self-represented litigants are involved.' " Miletak argues that the court denied his recusal request, a jury trial, and a court reporter; failed to rule on motions; and "made rulings that consistently disfavored [him] as a self-represented litigant." He further contends that the record reflects "inconsistencies" or "contradictory statements [by the trial court] about whether [his] prior litigation history as a pro per litigant was considered at trial or in post judgment proceedings."

We are not persuaded by Miletak's claim of judicial bias or misconduct. First, Miletak does not provide a citation to the record where the trial court's purported negative statement about self-represented litigants appears.[8]

Second, regarding the various rulings that were adverse to Miletak and which he raises on appeal, he fails to demonstrate error. We are therefore unpersuaded that those rulings suggest bias by the trial court. (See *People v. McWhorter* (2009) 47 Cal.4th 318, 374 [determining that the defendant's judicial bias claim failed where trial court properly ruled against the defendant on several pretrial issues]; *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1219-1220.)

Third, regarding the purported "inconsistencies" or "contradictory statements" by the trial court about whether Miletak's prior litigation history would be or was considered, the record reflects the following: Before trial, the trial court denied without prejudice Miletak's motion to exclude evidence of prior lawsuits against Royal Coach and evidence of his litigation history "as to the determination that these matters were

---

[8] We also note that the trial court, in its order denying Miletak's motion for new trial and in the settled statement, denied ever stating that it disliked self-represented litigants.

relevant as raised by the evidence." The court granted Miletak's "motion to preclude his prior litigation history against other parties." The court later determined that Miletak's "history as a pro per litigant . . . was very relevant during the trial." Specifically, Miletak's "prior lawsuit against [Royal Coach] was relevant on the issue of malice." Consistent with this record, the trial court at the hearing on the proposed settled statement indicated that it had "declined" to consider Miletak's prior litigation "against other people," but that it did consider his "prior conduct" regarding "this case" —an apparent reference to the employment action against Royal Coach. On this record, Miletak fails to establish prejudicial evidentiary error by the trial court. He also fails to demonstrate "inconsistencies" or "contradictory statements" by the trial court, let alone any that suggest bias or misconduct.

### 9. Denial of motion to vacate judgment

We understand Miletak to contend that the trial court erred in a July 25, 2025 order denying his motion to vacate the judgment and/or erred in a July 30, 2025 order[9] denying his motion for reconsideration. At the time the court made these orders, Miletak's instant appeal from the judgment was pending.

According to Miletak, in the first order, the court denied the motion to vacate on the grounds that (1) the court believed it did not have jurisdiction to vacate the judgment while the case was on appeal, and (2) the motion to vacate otherwise lacked merit. Regarding the second order, according to Miletak, the court denied reconsideration because the court again determined that it did not have jurisdiction over the matter while the appeal was pending. Miletak contends that the court erred because: (1) it raised the jurisdictional issue itself, (2) the court had the "inherent power to vacate a void judgment at any time, notwithstanding a pending appeal," (3) "the court should have addressed the

---

[9] The order denying Miletak's motion for reconsideration was dated July 29, 2025, and filed on July 30, 2025.

merits" of his motion, and (4) the "[b]y refusing to hear and decide the merits, the trial court deprived [him] of a meaningful opportunity to be heard on the claims . . . ."

Royal Coach contends that Miletak's argument "must be disregarded" because the latter July order is not contained in the record on appeal, and he fails to recite the entirety of relevant portions of the order. Royal Coach also argues that the court's latter July order included a finding that there was no basis for reconsideration under Code of Civil Procedure section 1008 because Miletak failed to show any new or different facts, circumstances, or law.

We determine that Miletak fails to meet his burden of showing reversible error.[10] First, Miletak does not provide citations to the record on appeal showing where the two July 2025 orders, his moving papers for both motions, and Royal Coach's opposition papers for both motions appear. Although it appears from our review of the record that one of the July 2025 orders is attached to one of Miletak's several filings in this court outside the normal briefing process, and although an excerpt from some of Royal Coach's opposition papers is contained in one of Miletak's several requests for judicial notice in this court concerning other issues, these portions are inadequate to assess Miletak's claim of error. In the absence of an adequate record, with necessary record citations, Miletak cannot meet his burden to show that the trial court erred regarding either of the two orders. (*Jameson*, *supra*, 5 Cal.5th at p. 609; *Maria P.*, *supra*, 43 Cal.3d at p. 1295; see *Duarte*, *supra*, 72 Cal.App.4th at p. 856.)

Second, according to the parties' descriptions of the orders, the trial court determined that it had no jurisdiction to consider Miletak's motions, and that even if it had jurisdiction, Miletak failed to show that he was entitled to relief. In other words, the trial court ruled on the substantive merit (or lack thereof) of each motion. Miletak on

---

[10] For purposes of this appeal, we assume, without deciding, that the July 2025 orders are appealable and are encompassed within Miletak's earlier filed notice of appeal from the judgment.

21

appeal fails to present any argument as to why the court erred in its ruling on the substance of each motion, and he otherwise fails to demonstrate that the court erred in denying each motion on the merits.

In sum, without deciding (1) whether the trial court had jurisdiction, notwithstanding the pending appeal, to rule on Miletak's motion to vacate the judgment and motion for reconsideration, and (2) whether he could properly bring a motion for reconsideration, we determine that he fails to meet his burden of "demonstrat[ing], on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson*, *supra*, 5 Cal.5th at p. 609.)

### 10. **Whether there was fraud on the trial court requiring reversal of the judgment**

We understand Miletak to contend that the trial court erred in denying an October 2025 renewed motion to vacate the judgment. He argues that Royal Coach committed fraud on the court which requires reversal of the judgment. Specifically, Miletak contends that Sandra Allen, who was apparently the former owner of Royal Coach, "continued prosecuting this case without disclosing that Royal Couch Tours had been sold to TKRG Holdings Inc. months before trial." Miletak argues that a civil action must "be prosecuted by the real party in interest," and that "concealment of the company's sale deprived [him] of the ability to challenge standing, to conduct discovery on the proper plaintiff, and to raise objections that go to the heart of the adversarial process." According to Miletak, the "concealment of corporate ownership changes during litigation can constitute extrinsic fraud when it prevents the opposing party from adequately defending or challenging the real party in interest." Miletak argues that a judgment procured by extrinsic fraud may be challenged by a motion in the same action or by an independent action.

In making this contention, Miletak relies on the following factual assertions: (1) a trial witness, Allen, "falsely testified that she was the 'President/Owner' of Royal Coach

22

Tours"; (2) Allen "submitted a false sworn affidavit dated October 29, 2024 in [a] Florida post-judgment action repeating this misrepresentation in order to enforce the California judgment against [Miletak's] Florida homestead"; and (3) "official records from the Surface Transportation Board and the Federal Register . . . establish that Royal Coach Tours was sold to TKRG Holdings, Inc. by October 3, 2023 about eight . . . months before trial."

In support of these factual assertions, Miletak filed in this court a request for judicial notice on November 4, 2025, seeking judicial notice of the following four sets of documents:  (1) two statements of information regarding Stockland, Inc. filed by Allen with the California Secretary of State in November 2024, along with an additional four-page document by an "online directory," to establish that Allen and another individual own Stockland, Inc.; (2) a 2023 notice by the federal Surface Transportation Board contained in the Federal Register regarding a proposed acquisition involving TKRG Holdings, Inc. and Royal Coach, among others, to establish that the Surface Transportation Board approved TKRG Holdings, Inc.'s acquisition of Royal Coach; (3) an excerpt from a purchase agreement dated December 31, 2023, involving Allen, Stockland, Inc., and TKRG Holdings, Inc., among others—which was apparently filed by Royal Coach with its July 2025 opposition to an ex parte application and motion for reconsideration by Miletak—to "prov[e] transfer of ownership and litigation rights before trial"; and (4) an October 2024 affidavit by Allen filed in Florida indicating that she was the president/owner of Royal Coach after the purported sale of the company to TKRG Holdings, Inc.

Royal Coach has filed opposition to Miletak's request for judicial notice.  Royal Coach contends, among other arguments, that although judicial notice may be taken of the existence of certain documents, judicial notice may not be used to establish the truth of the matters contained within those documents.

23

We determine that Miletak fails to meet his burden on appeal to show reversible error.[11]  He does not provide legal authority establishing that a purported sale of Royal Coach to another entity precluded Royal Coach from continuing to prosecute the action against him.  In view of Miletak's failure to demonstrate as a legal matter that Royal Coach was precluded from continuing to prosecute him after it was purportedly sold to another entity, we need not determine whether he established as a factual matter if or when Royal Coach was sold.  We therefore deny Miletak's November 4, 2025 request for judicial notice in its entirety.

### 11. Settled Statement

"A settled statement is a summary of the superior court proceedings approved by the superior court."  (Rule 8.137(a).)  In this case, the trial court filed a settled statement of the oral proceedings on the trial of Royal Coach's malicious prosecution claim.  Miletak contends that the court "deliberately delayed to finalize or certify any version of the settled statement" after the hearing on his proposed statement.  Instead, the "final version of the settled statement was only certified after" this court issued an order to the trial court.  Second, Miletak contends that the settled statement contains "several inaccuracies."

Regarding the trial court's purported delay in filing the settled statement, Miletak fails to provide persuasive argument with supporting legal authority demonstrating that he is entitled to any relief, including that any error was prejudicial or otherwise requires

---

[11] Miletak fails to provide citations to the record on appeal showing where his October 2025 renewed motion to vacate the judgment and the trial court's order appear.  Based on our review of the record, it appears that copies of these documents are attached to a "supplemental statement" filed by Miletak in this court outside the normal briefing procedure.  (Uppercase omitted.)  For purposes of this appeal, we assume, without deciding that the trial court's denial of Miletak's October 2025 renewed motion to vacate the judgment is appealable and is encompassed within his earlier filed notice of appeal from the judgment.  For purposes of this appeal, we also assume, without deciding that Miletak could properly bring a "renewed" motion to vacate the judgment.

reversal of the judgment. (See *Jameson*, *supra*, 5 Cal.5th at p. 609.) Regarding Miletak's contention that the settled statement is inaccurate, we observe that when a "litigant fails to convince the trial judge that his proposed statement accurately reflects the proceedings in question, the action of the judge who heard and tried the case must be regarded as final since his familiarity with the trial and knowledge of what took place make him specially qualified to determine what the evidence and the proceedings were." (*Cross v. Tustin* (1951) 37 Cal.2d 821, 826.) "The purpose of the settled statement procedure is 'to conserve the time and effort of the reviewing court . . .' [citation], and to that end this court cannot be asked to settle a statement [citation]. Rather, '. . . full and plenary power over [a settled statement] is reposed in the trial judge, subject only to the limitation that he does not act arbitrarily. [Citations.]' [Citations.]" (*People v. Castro* (1982) 138 Cal.App.3d 30, 32.) No such showing has been made here.

### 12. Denial of writ petitions by this court

Miletak contends that this court's denial of his prior (unspecified) "petitions for supersedeas and mandate" had the "practical effect" of denying him "the resources necessary to secure professional appellate representation." We are not unsympathetic to a litigant's need for appellate counsel. However, Miletak fails to establish that this court may reconsider in this appeal any of his prior writ petitions. He also does not provide adequate citations to the record to support any of his factual assertions. We therefore determine that Miletak fails to demonstrate reversible error.

### 13. Prior appeal

We understand Miletak to contend that this court erred in affirming the denial of his anti-SLAPP motion in his prior appeal. (See *Royal Coach Tours*, *supra*, H050167.) This court filed the opinion in March 2023. The remittitur issued in June 2023. A remittitur issues only after an opinion is final for all purposes. (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1500.) As this court's prior opinion is final for all purposes, we cannot and do not consider Miletak's claims of error regarding the prior opinion.

25

### 14. Other filings in this court

In addition to the request for judicial notice that we have already discussed in connection with Miletak's contention that there was fraud committed on the trial court, Miletak filed a second request for judicial notice on November 24, 2025. In this second request, Miletak seeks judicial notice of (1) a memorandum of points and authorities and (2) a declaration by Miletak with attached exhibits, all of which he filed in the trial court on November 18, 2025, in support of an ex parte application to vacate the judgment. The record on appeal does not reflect the trial court's ruling on the ex parte application. Instead, Miletak in his request for judicial notice asks that we consider these documents "in support of" his opening brief on appeal.

We deny the November 24, 2025 request for judicial notice in its entirety. In assessing whether the trial court committed error, we may not judicially notice documents—here, a memorandum of points and authorities and a declaration with exhibits—that were filed after the relevant rulings by the trial court. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [explaining that "normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered' "].) Further, to the extent Miletak seeks to incorporate in this appeal the arguments that he made in the November 18, 2025 memorandum of points and authorities that he filed in the trial court, we decline to consider those arguments as they should have been contained in his opening brief on appeal. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1064 [explaining that "[r]equests for judicial notice should not be used to 'circumvent[]' appellate rules and procedures, including the normal briefing process"].)

Miletak filed a third request for judicial notice in this court on February 17, 2026. He seeks judicial notice of the minute order for the June 14, 2024 trial. Miletak argues that the minute order is relevant to "issues raised in [his] briefing" regarding procedural

improprieties concerning the statement of decision. However, this issue concerning the statement of decision was not raised in Miletak's opening brief on appeal. Further, his request for judicial notice of the minute order was not filed until after Royal Coach filed its respondent's brief on appeal. Miletak fails to offer any explanation as to why the minute order for trial was not included in his notice designating the record on appeal, or why he waited to request judicial until after Royal Coach filed its respondent's brief. We therefore deny Miletak's February 17, 2026 request for judicial notice.

Miletak filed a "supplemental statement" on February 17, 2026, objecting to "the procedure used by the trial court in adopting the proposed statement of decision." As we have just explained, Miletak did not raise any procedural issue regarding the statement of decision in his opening brief on appeal. Moreover, he filed the supplemental statement in this court after appellate briefing was complete and without obtaining permission from this court, which deprived Royal Coach of an opportunity to address the issue in its respondent's brief. We therefore decline to consider the arguments raised by Miletak in his February 17, 2026 "supplemental statement."

Lastly, Miletak filed a motion to seal on February 17, 2026. The document that Miletak seeks to file under seal is attached as exhibit A to the motion and reflects settlement communications between the parties in 2015. Miletak contends that the exhibit "is submitted for the limited purpose of demonstrating prejudice resulting from the trial court's procedure regarding proposed statements of decision." As we have just explained, Miletak did not raise any procedural issue regarding the statement of decision in his opening brief on appeal and, by raising this issue after normal appellate briefing has been completed, he deprived Royal Coach of an opportunity to address the issue in its respondent's brief. We therefore deny Miletak's February 17, 2026 motion to seal. The Clerk of the Court is directed to return exhibit A, which is attached to the February 17, 2026 motion to seal, to Miletak unfiled.

27

### III.    DISPOSITION

The judgment is affirmed.

_____

                                  Greenwood, P. J.


WE CONCUR:


_____

 Danner, J.


_____

 Bromberg, J.


H052687 Royal Coach Tours, Inc. v. Miletak